# 14-1663-cv

## United States Court of Appeals

*for the*

## Second Circuit

ADVANCED AEROFOIL TECHNOLOGIES, AG, a Swiss Corporation,
ADVANCED AEROFOIL TECHNOLOGIES, INC., a Delaware Corporation,
ADVANCED AEROFOIL TECHNOLOGIES, GmbH, a German Corporation,

*Plaintiffs-Appellants,*

– v. –

THOMAS TODARO, ADVANCED ENGINEERING TECHNOLOGIES, INC.,
ANTHONY CHALDER, MARK TARBY, CHARLES BYRD,
DENNIS PFISTER,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK IN CASE NO. 13-CV-7181,
THE HONORABLE ROBERT W. SWEET

## BRIEF AND SPECIAL APPENDIX ON
## BEHALF OF PLAINTIFFS-APPELLANTS

COLE, SCHOTZ, MEISEL, FORMAN
& LEONARD, P.A.
*Attorneys for Plaintiffs-Appellants*
25 Main Street
Court Plaza North
Hackensack, New Jersey 07601
(201) 489-3000

*On the Brief*:
JAMES T. KIM, ESQ.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1, the undersigned attorney of record for Advanced Aerofoil Technologies, AG, a Swiss Corporation, Advanced Aerofoil Technologies, Inc., a Delaware Corporation, and Advanced Aerofoil Technologies GmbH, a German Corporation, all non-governmental parties, certify that Advanced Aerofoil Technologies, AG, is the parent corporation of Advanced Aerofoil Technologies, Inc.  There are no corporate parents, affiliates and/or subsidiaries of said parties which are publicly held.


DATED: August 28, 2014          COLE, SCHOTZ, MEISEL,
                                FORMAN & LEONARD, P.A.
                                A Professional Corporation
                                Attorneys for Appellants


                                By: */s/ James T. Kim*_____
                                    James T. Kim
                                    900 Third Avenue
                                    New York, NY 10022-1906
                                    (212) 752-8000

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................2

STATEMENT OF THE CASE....................................................................3

    Procedural History ...................................................................3

    Background ..............................................................................4

    The Arbitration ......................................................................8

SUMMARY OF ARGUMENT ..................................................................13

    The Arbitrator Exceeded His Power in the Arbitration................................13

    The Arbitrator Engaged in Manifest Disregard of the Law .........................16

STANDARD OF REVIEW ......................................................................18

ARGUMENT ......................................................................................18

I.    THE DISTRICT COURT SHOULD HAVE VACATED THE
    FINAL AWARD BECAUSE THE ARBITRATOR EXCEEDED
    HIS AUTHORITY IN THE ARBITRATION ...............................................18

    A.    The District Court Should Have Found That The Arbitrator
    Exceeded His Power By Awarding Attorneys' Fees To
    Respondents-Appellees In The Face Of The Explicit Terms
    Of The Termination Agreement And Unequivocal Case Law
    To The Contrary ..............................................................19

        1.    There is no basis to award attorneys' fees and costs to
        Respondents-Appellees...........................................19

        2.    The Arbitrator exceeded his authority by applying the
        "*Artvale* rule" – an inapplicable Federal doctrine – to
        award Respondents-Appellees their attorneys' fees and
        costs..................................................................23

ii

3. Even if the *Artvale* doctrine applied to the Arbitration, the Arbitrator still exceeded his authority by awarding Respondents-Appellees their attorneys' fees and costs ............ 26

B. Even if Respondents-Appellees Were Entitled to an Award for their Attorneys' Fees and Costs Incurred in the Arbitration, Which They are Not, the Arbitrator Still Exceeded His Authority in Awarding $302,165.55 to Respondents-Appellees ...................................................... 29

1. Respondents-Appellees Failed To Properly Allocate Fees and Costs Incurred in the Federal Actions and Arbitration to Reflect Those Legal Services That Were Provided On Behalf Of Non-Respondent Parties and Respondents-Appellees Admitted That Flowcastings Paid All Legal Fees .............................................................. 30

2. Pfister likewise failed to demonstrate that he was entitled to $8,889.64 in attorneys' fees and costs .................... 33

3. The Arbitrator also exceeded his authority by ignoring AAT's right to seek injunctive relief pursuant to Section 10(c) of the Termination Agreement ........................... 34

II. THE DISTRICT COURT SHOULD HAVE VACATED THE FINAL AWARD BECAUSE THE ARBITRATOR EXCEEDED HIS POWER AND RENDERED AN IRRATIONAL AWARD THROUGH HIS DISREGARD OF THE *GLOBAL* CASE .......................... 35

III. THE DISTRICT COURT SHOULD ALSO HAVE VACATED THE AWARD AS A RESULT OF THE ARBITRATOR'S MANIFEST DISREGARD OF THE LAW ................................................. 40

CONCLUSION ....................................................................................... 43

# TABLE OF AUTHORITIES

**Page(s)**

## Cases:

*Arthur the Dog v. U.S. Merch. Inc.*,
  No. 05-CV-0958, 2007 WL 2493427 (E.D.N.Y. Aug. 29, 2007)...........21, 24

*Artvale, Inc. v. Rugby Fabrics Corp.*,
  363 F.2d 1002 (2d Cir. 1996) ..............................................................*passim*

*Bart v. Miller*,
  302 A.D.2d 379, 754 N.Y.S.2d 559 (2d Dep't 2003) ...................................41

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
  586 F. Supp. 1286 (S.D.N.Y. 1984) ..............................................................23

*Centro Empresarial Cempresa SA v. Am. Movil SAB*,
  17 N.Y.3d 269, 929 N.Y.S.2d 3 (2011)...................................................*passim*

*City of Oswego v. Oswego City Firefighters Assoc.*,
  21 N.Y.3d 880, 965 N.Y.S.2d 764 (2013).....................................................22

*Cohen v. Ark Asset Holdings, Inc.*,
  302 A.D.2d 209, 755 N.Y.S.2d 37 (1st Dep't 2003).....................................41

*Duferco Steel Trading v. T. Klaveness Shipping A/S*,
  333 F.3d 383 (2d Cir. 2003) .........................................................................18

*Global Minerals & Metals Corp. v. Holme*,
  35 A.D.3d 93, 824 N.Y.S.2d 210 (1st Dep't 2006)..............................*passim*

*In re Adirondack Beverages Corp.*,
  108 A.D.3d 832, 968 N.Y.S.2d 711 (2013)...................................................22

*Jaghory v. New York State Department of Education*,
  131 F.3d 326 (2d Cir. 1997) .........................................................................18

*Kamfar v. New World Rest. Group, Inc.*,
  347 F. Supp. 2d 38 (S.D.N.Y. 2004) ......................................................24, 25

*Kidder, Peabody & Co., Inc. v. McArtor*,
  223 A.D.2d 502, 637 N.Y.S.2d 99 (1st Dep't 1996)...............................19-20

*Leed Architectural Prods., Inc. v.*
  *United Steelworkers of Am., Local 6674*,
  916 F.2d 63 (2d Cir. 1990) ...........................................................................19

*Lubrizoil Corp. v. Exxon Corp.*,
    957 F.2d 1302 (5th Cir. 1992) ......................................................27

*Matza v. Oshman, Helfenstein & Matza*,
    33 A.D.3d 493, 823 N.Y.S.2d 47 (1st Dep't 2006)...............................20, 22

*Patel v. Contemporary Classics of Beverly Hills*,
    259 F.3d 123 (2d Cir. 2001) ........................................................18

*Pike v. Freeman*,
    266 F.3d 78 (2d Cir. 2001) .........................................................18

*R.C. Layne Construction, Inc. v. Stratton Oakmont, Inc.*,
    228 A.D.2d 45, 651 N.Y.S.2d 973 (1st Dep't 1996)....................................41

*Sawtelle v. Waddell & Reed*,
    304 A.D.2d 103, 754 N.Y.S.2d 264 (1st Dep't 2003)..................................41

*Schwimmer v. Malinas*,
    No. 6320/12, 2013 WL 452792
    (Sup. Ct. Kings County Jan. 30, 2013)..........................................22

*Spear Leeds & Kellogg v. Bullseye Securities, Inc.*,
    291 A.D.2d 255, 738 N.Y.S.2d 27 (1st Dep't 2002)....................................41

*Stewart Tabori & Chang, Inc. v. Stewart*,
    282 A.D.2d 385, 723 N.Y.S.2d 492 (1st Dep't 2001)..................................41

*Transparent Value, L.L.C. v. Johnson*,
    93 A.D.3d 599, 941 N.Y.S.2d 96 (1st Dep't 2012)......................................40

*UBS Warburg, LLC v. Auerbach*,
    294 A.D.2d 245, 744 N.Y.S.2d 364 (1st Dep't 2002)..................................41

*Versatile Housewares & Gardening Sys., Inc.*,
    819 F. Supp. 2d 230 (S.D.N.Y. 2011) ..........................................25

*Warner Theatre Assocs. L.P. v. Metropolitan Life Ins. Co.*,
    149 F.3d 134 (2d Cir. 1998) ........................................................39

*Wien & Malkin LLP v. Helmsley-Spear, Inc.*,
    6 N.Y.3d 471, 813 N.Y.S.2d 691 (2006), *cert. dismissed*,
    548 U.S. 940, 127 S. Ct. 34, 165 L. Ed. 2d 1012 (2006) ...........................40

**Statutes & Other Authorities:**

9 U.S.C. § 16(a)(1)(D) ..........................................................................1

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1332 ...............................................................................1, 3

Fed. R. Civ. P. 12(b)(6) ........................................................................18

CPLR § 7511 ...................................................................................2, 18

CPLR § 7511(b)(1) ...............................................................................43

CPLR § 7511(b)(1)(iii) ..........................................................................18

## JURISDICTIONAL STATEMENT

Advanced Aerofoil Technologies, Inc. ("AAT, Inc."), a Delaware corporation, Advanced Aerofoil Technologies AG ("AAT AG"), a Swiss corporation, and Advanced Aerofoil Technologies (Germany), GmbH ("AAT GmbH"), a German corporation (collectively, "AAT" or "Appellants"), appeal the opinion dated April 16, 2014 (the "Opinion") and judgment entered on May 19, 2014 (the "Judgment") of the United States District for the Southern District of New York (Robert W. Sweet, J.), denying AAT's petition to vacate the arbitration award entered by the International Arbitration Tribunal in the International Centre for Dispute Resolution ("ICDR") on July 16, 2013 (the "Award") and granting the motion to dismiss and motion to confirm the Award of respondents-appellees, Thomas Todaro ("Todaro"), Advanced Engineering Technologies, Anthony Chalder ("Chalder"), Mark Tarby ("Tarby"), Charles Byrd ("Byrd") and Dennis Pfister ("Pfister") (collectively, "Respondents-Appellees").

The United States District Court for the Southern District of New York has diversity jurisdiction pursuant to 28 U.S.C. 1332 as Plaintiffs and Defendants are citizens of different states and the amount in controversy is over $75,000.

The United States Court of Appeals for the Second Circuit has jurisdiction pursuant to 28 U.S.C. § 1291 and under 9 U.S.C. § 16(a)(1)(D) as an appeal from an order confirming an arbitration award.

By Opinion dated April 16, 2014, the District Court (Robert W. Sweet, D.J.), granted Respondents-Appellees' motion to dismiss the petition and to confirm the award (SPA1). A Final Judgment was entered on May 19, 2014, which granted the relief set forth in the District Court's April 16, 2014 Opinion (SPA21).

This appeal was timely taken by Amended Notice of Appeal entered on May 27, 2014 from a Final Judgment that disposed of all claims. (SPA24).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the district court (Robert W. Sweet, D.J.) erred granting Respondents-Appellees' motion to dismiss the Petitioners-Appellants' petition, and to confirm the arbitration award where:

(1)    The arbitrator exceeded his powers within the meaning of CPLR 7511 by awarding over $300,000 in attorneys' fees in violation of Section 10(d) of the termination agreement dated September 2, 2011 (the "Termination Agreement");

(2)    The arbitrator exceeded his powers within the meaning of CPLR 7511 through his application of controlling law, including application of the "Artvale rule," *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002 (2d Cir. 1996), a federal doctrine, rather than New York law, in awarding over $300,000 in attorneys' fees to Respondents-Appellees;

(3)    The arbitrator engaged in manifest disregard of the law by application of *Centro Empresarial Cempresa SA v. Am. Movil SAB*, 17 N.Y.3d 269, 929

2

N.Y.S.2d 3 (2011) ("*Centro*"), rather than *Global Minerals & Metals Corp. v. Holme*, 35 A.D.3d 93, 824 N.Y.S.2d 210 (1st Dep't 2006) ("*Global Minerals*"), regarding the Respondents-Appellees' fiduciary duty to the corporate entity; and

(4)     The arbitrator engaged in manifest disregard of the law by application of *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002 (2d Cir. 1996), regarding the payment of litigation expenses due to a party who breaches a covenant not to sue when Section 10(d) of the Termination Agreement dated September 2, 2011 expressly provides that the parties will bear their own litigation costs and attorneys' fees.

## STATEMENT OF THE CASE

### Procedural History

AAT filed a petition in the Supreme Court of the State of New York on September 17, 2013, seeking to vacate the Award entered in arbitration proceedings between AAT and Respondents-Appellees (the "Arbitration"). (A64) Respondents-Appellees subsequently filed a notice of removal to the United States District Court for the Southern District of New York on October 10, 2013, alleging diversity jurisdiction pursuant to 28 U.S.C. 1332. (A246) The case was subsequently transferred to the Southern District of New York.  By Opinion dated April 16, 2014, the district court (Robert W. Sweet, D.J.), granted Respondents-Appellees' motion to dismiss the petition and to confirm the Award (SPA1).  A

Final Judgment was entered on May 19, 2014, which granted the relief set forth in the court's April 16, 2014 Opinion (SPA21) and this appeal followed.

**Background**

AAT AG is the parent corporation of AAT Inc. and AAT GmbH. AAT AG is a manufacturer of precision investment castings for the power generation and transportation industries. (A67)  AAT Inc. is a sister corporation of AAT GmbH and was incorporated in the United States to expand and build manufacturing facilities in the United States and to serve customers in the United States and Canada. AAT GmbH operates a facility in Bayreuth, Germany that manufactures precision investment castings.  AAT manufactures precision investment castings for use in the power generation and transportation industries.  (A68)

AAT has developed a proprietary state-of-the-art casting process to facilitate long term customer relationships and maintains a superior reputation in the industry. Beginning in February 2010, AAT implemented a plan to expand its operations.  Byrd, Pfister and Todaro were directed to identify and solicit potential partners in the industry for the expansion. (A68) Respondents-Appellees also used AAT's expansion plans and contacts to gain access to interested clientele in the industry and, as a result, developed relationships with key personnel for this clientele and learned the specific needs of each of these prospective clients.  (A68)

4

Beginning in at least March 2011, Respondents-Appellees formed Flowcastings, GmbH ("Flowcastings") to directly compete with AAT, and, using AAT's contacts and proprietary information, (i) secured outside third-party investors; (ii) registered Flowcastings' website (*see* A117); (iii) designed its corporate log (*see* A119); (iv) designed its manufacturing facility; (v) secured a building site in Nuremburg, Germany; (vi) hired employees; (vii) procured equipment for Flowcastings; (viii) recruited AAT's customers for Flowcastings; (ix) downloaded AAT's proprietary testing data and files; and (x) destroyed AAT computer records.  (*See* A68)

Shortly thereafter, Byrd abandoned his position with AAT in March 2011.[1] (A68)  Byrd's employment contract, however, required that he give six months' prior notice of termination, which would have expired on September 28, 2011. (A68-69, 121-124)  In May 2011, representatives of AAT and its controlling shareholder ("AAT Representatives") commenced an investigation of non-party Hervé Flutto ("Flutto"), AAT's CFO and co-Managing Director of AAT with Byrd. The AAT Representatives discovered that Flutto was working with a company called Cofundit, albeit not a competitor of AAT.  Neither Flutto nor Byrd disclosed to AAT the existence of, and Respondents-Appellees' involvement and activities with, Flowcastings. (A69)

---

[1] Pfister resigned from AAT one month earlier in February, 2011.

Flutto's activities caused AAT to question Respondents-Appellees about their knowledge of any other employees moonlighting while at AAT. Respondents-Appellees denied that they, or any other employees, were moonlighting while at AAT and did not disclose Flowcastings or its operations. (A69)  On June 4, 2011, Todaro, Chalder and Tarby and tendered their resignations from AAT. (A69)    Through various agents who remained employed at AAT, Respondents-Appellees Byrd, Flutto and Todaro continued to access AAT's customer files and other trade secrets to buildup Flowcastings.  On September 2, 2011, the parties entered into the Termination Agreement.[2]  At the time the Termination Agreement was signed, AAT had no knowledge of the existence of Flowcastings or the Respondents-Appellees' conspiracy and had no reason to suspect that Respondents-Appellees had started a competitor using AAT's technology, customers and resources.   Instead, AAT entered into a standard separation agreement with the intent to finalize the Respondents-Appellees' departure from AAT. (A69)

In mid-October 2011, one of the AAT Representatives was inadvertently copied on an email from an alloy supplier to AAT in answer to an inquiry by Flutto

---

[2] The Termination Agreement provides for a mutual general release of all claims by the parties against each other, contains a covenant not to sue and an arbitration provision with an exception for seeking injunctive relief in a judicial form, and expressly provides that the parties will bear their own litigation costs and attorneys' fees.

regarding supply of alloy to Flowcastings. (A69-70)  Attached to Flutto's email was a PowerPoint presentation which identified Respondents-Appellees and other former AAT employees as part of Flowcastings' management team.  (A70, 125-135).  AAT thereupon conducted an investigation that that led them to conclude that Respondents-Appellees were secretly working for Flowcastings, a company set up to directly compete with AAT, while being paid by AAT.  Had AAT known about such activities, it would not have entered into the Termination Agreement and released their claims against Respondents-Appellees.  (A70)

Pursuant to the carve-out provision explicitly agreed to by the parties in the Termination Agreement, AAT filed for injunctive relief against Respondents-Appellees and their co-conspirators in November 2011 in the United States District Court for the Northern District of Illinois (the "Illinois Action").  Having determined that the Court lacked personal jurisdiction over Respondents-Appellees, the Court dismissed AAT's complaint in November 2011 and directed AAT to pursue its claims in New York.  AAT filed its Verified Complaint in the Southern District of New York in December 2011 (the "New York Action").  Thereafter, the New York Action was dismissed on the grounds that AAT failed to state a viable claim for violations of the Computer Fraud and Abuse Act and, therefore, the Court did not have subject matter jurisdiction. (A70)

**The Arbitration**

On September 17, 2012, AAT submitted its statement of claims to the IDRC. (A70, 81).  AAT sought an award: (i) declaring that the Termination Agreement and Release were void and unenforceable; (ii) requiring Respondents-Appellees to return all property in their possession belonging to AAT; and (iii) prohibiting Respondents-Appellees from usage or disclosing AAT's confidential and proprietary information. (A70, 81).  Respondents-Appellees filed an answer and counterclaim seeking a determination that the Termination Agreement was valid and enforceable, that AAT's claims were released by the Termination Agreement and that AAT was liable to Respondents-Appellees for their attorneys' fees and costs incurred in defending against the Federal Actions and the Arbitration. Pfister separately sought an award for reimbursement of his attorneys' fees in bringing his summary judgment motion. (A71)

<u>The Partial Final Award</u>

The parties filed dispositive motions which were all denied except one motion granted in favor of Pfister.  A hearing was commenced shortly thereafter lasting seven days.  On March 6, 2013, the Arbitrator delivered the Partial Final Award. (A71, 7)  Relying solely on *Centro*, the Arbitrator determined that AAT's claims were barred by the Termination Agreement and granted Respondents-Appellees' counterclaim for a declaration that the Termination Agreement was

8

valid and enforceable. (A71) The Arbitrator also deferred decision on Respondents-Appellees' counterclaim for damages for breach of the Termination Agreement pending additional briefing and proof as well as Pfister's claim for costs and attorneys' fees incurred in connection with the dispositive motion. (A71, 117)

Importantly, although directly on point with the issues raised in the Arbitration and briefed at length by AAT, the Arbitrator altogether ignored *Global Minerals*, which provides that officers of a closely held company, like Respondents-Appellees, owe a fiduciary duty of loyalty to their employer. (A71) That duty requires Respondents-Appellees to disclose any information that could reasonably bear on AAT's consideration of a termination and release agreement with Respondents-Appellees. (A71-72) Thus, when negotiating the Termination Agreement, Respondents-Appellees had the duty to disclose to AAT, whether asked by AAT or not, that they, in fact, were actively engaged in forming and operating a competing company, Flowcastings, while employed with AAT. (A72)

<u>The Final Award</u>

Thereafter, the parties submitted supplemental briefing regarding Respondents-Appellees' claim for damages. In their submission, AAT argued Respondents-Appellees are not entitled to an award of attorneys' fees and costs pursuant to the clear terms of the Termination Agreement, section 10(d) which

9

requires the parties to bear their own attorneys' fees and costs.  AAT also argued that Respondents-Appellees' reliance on *Artvale, Inc. v. Rugby Fabrics Corp.* 363 F.2d 1002, 1008 (2d Cir. 1966) ("*Artvale*") was inappropriate as not applying to the arbitration and as limited to those federal court cases where the parties' settlement agreement containing a covenant not to sue is silent on attorneys' fees. (A72)

Following submission of briefs by all parties, the Arbitrator issued his Final Award on April 22, 2013.  (A72, 43)  The Final Award rendered judgment against AAT and in favor of Respondents-Appellees on the counterclaim for breach of the Termination Agreement and awarded damages in the form of costs and reasonable attorneys' fees.  (A72, 43)  The Arbitrator thereafter directed Respondents-Appellees to submit their statement of costs and fees incurred in each of three separate litigation matters as follows: (i) attorneys' fees and costs incurred in the Illinois case; (ii) attorneys' fees and costs incurred in the New York case; and (iii) attorneys' fees and costs incurred in this arbitration proceeding until September 17, 2012. (A72, 43)  On May 10, 2013, Respondents-Appellees submitted their respective statement of costs and fees.  (A72, 150-240).  Respondents-Appellees demanded $302,165.55 in attorneys' fees and costs.

On May 21, 2013, AAT submit its brief in opposition to Respondents-Appellees' Statement of Costs, arguing that Respondents-Appellees had failed to

meet their burden of proof and demonstrate that they are entitled to an award of $302,165.55 pursuant to the Final Award.  Respondents-Appellees did not provide any factual basis in support of their demand for fees and costs and relied solely on a "spreadsheet" created by Respondents-Appellees' counsel that merely provided a list of time keepers, hourly rates and hours purportedly worked, while providing no information that would make it possible for the parties and the Arbitrator to verify the accuracy and reasonableness of the purported fees and costs incurred by these Respondents-Appellees.  *Id.*  Respondents-Appellees also failed to allocate the expenses allegedly incurred by Respondents-Appellees to reflect the portion of the legal services rendered for the benefit of the various non-respondent defendants in the Federal Actions.  *Id.*  To the contrary, Respondents-Appellees appeared to demand payment from AAT for ***all*** fees incurred in the Federal Actions and the Arbitration prior to the cut-off date for fees (September 17, 2012).  *Id.*

Respondents-Appellees also conveniently ignored the fact that their company, Flowcastings, was a named defendant in the Federal Actions and actually paid for all of Respondents-Appellees' legal fees incurred in connection with the Federal Actions. (A73)  As a result, AAT argued that Respondents-Appellees would obtain an unfair windfall if Flowcastings actually paid Respondents-Appellees' legal fees and costs and Respondents-Appellees were

11

permitted to recover litigation expenses that they never paid and are not obligated to pay or reimburse to Flowcastings. (A73-74)

Respondents-Appellees likewise ignored that the crux of the Federal Actions involved AAT seeking injunctive relief against Flowcastings, the primary defendant in the Federal Actions and a non-party to the Termination Agreement. As a result, the majority of Respondents-Appellees' fees incurred in the Federal Actions necessarily relate to AAT's applications for injunctive relief against Flowcastings and are not recoverable under the Final Award pursuant to Section 10(c) of the Termination Agreement. (A74)   For these reasons, AAT requested that Respondents-Appellees' demand for $302,165.55 in attorneys' fees and costs be denied in its entirety.  Because Pfister had also failed to demonstrate that the demanded attorneys' fees were reasonable, and to the extent Pfister's purported fees were incurred after the cut-off date (September 17, 2012), AAT likewise requested his demand for fees and costs be denied.  *Id.*

Notwithstanding each of AAT's well-reasoned arguments, on July 16, 2013 the Arbitrator awarded Respondents-Appellees their demanded costs and attorneys fees.  (A74, 43-55)  By Opinion dated April 16, 2014, the district court (Robert W. Sweet, D.J.), granted Respondents-Appellees' motion to dismiss the petition and to confirm the Award (SPA1).  A Final Judgment was entered on May 19, 2014, which granted the relief set forth in the court's April 16, 2014 Opinion (SPA21).

## SUMMARY OF ARGUMENT

The District Court's decision to grant Respondents-Appellees' motion to dismiss and confirm the Award should be reversed.

## The Arbitrator Exceeded His Power in the Arbitration

Pursuant to the clear and unambiguous terms of Section 10(d) of the Termination Agreement, which expressly provides that "the parties will bear their own costs, expenses, and attorneys' fees . . . incurred in or arising out of or in any way related to the matters released herein", Respondents-Appellees were **not** entitled to an award of attorneys' fees and costs.  In denying AAT's petition to vacate the Award, however, the District Court, upheld the Arbitrator's total disregard of Section 10(d) and permitted the Arbitrator to rewrite the terms of the contract relying on his illogical conclusion that somehow "the parties left open the possibility of claiming reimbursement for costs and fees in connection with judicial litigation and arbitration . . ." (SPA 13).  This clear abuse of the Arbitrator's authority should not have been permitted and, on this basis alone, the District Court's Judgment confirming the Award should be reversed and the Award vacated.

The District Court also held that the Arbitrator did not exceed his authority in Awarding Respondents-Appellees attorneys' fees based on its reasoning that "the exception in the Termination Agreement 'to the preclusion of costs and fees

13

can be . . . read to apply to breaches of the parties' covenants not to sue.'" (SPA 13). Even if there was an exception to the attorneys' fees provision of the Termination Agreement, which AAT vehemently denies, breach of the covenant not to sue is directly "related to the matters released [in the Termination Agreement]." (*See* A111). Accordingly, even under the Arbitrator's own interpretation of the Termination Agreement, the Award must be vacated.

Similarly, the District Court should have vacated the Award because the Arbitrator also exceeded his authority in the Arbitration by applying the *Artvale* Doctrine in order to circumvent Section 10(d) of the Termination Agreement. The Arbitrator's reliance on the *Artvale* Doctrine, a federal doctrine that does not apply here, as a basis for recovering legal fees incurred by Respondents-Appellees flies in the face of well established New York law and the express provisions of the Termination Agreement. Moreover, even if the *Artvale* Doctrine applied, Respondents-Appellees still would not be entitled to an award of attorneys fees because: (i) the Termination agreement was not silent as to attorneys' fees and costs and (ii) the lawsuit was not brought in bad faith. Two elements that must be met to apply the *Artvale* Doctrine. Because the Award was entered, in part, pursuant to the *Artvale* Doctrine and in contravention to the clear provisions of the Termination Agreement, the Award must be vacated.

14

Moreover, the Arbitrator exceeded his authority by awarding Respondents-Appellees over $300,000 in attorneys' fees and costs notwithstanding: (i) Respondents-Appellees' total failure to meet their burden of proof regarding their excessive claim for fees; (ii) Respondents-Appellees failure to properly allocate their fees; and (iii) the fact that Respondents-Appellees likely have suffered no actual damages as their company, Flowcastings, paid for their litigation and arbitration costs. The District Court did not address these issues, notwithstanding the fact that the Arbitrator's completely unsupported Award of these excessive and unwarranted fees was fully briefed by AAT in its petition to vacate the Award. Had the District Court analyzed these issues, it would have had no option but to grant AAT's motion to vacate the Award.

The Arbitrator also exceeded his authority by failing to apply the controlling law set forth in *Global Minerals*. Rather than applying the analysis set forth in that case regarding the fiduciary obligations of an officer, directors and/or shareholder of a closely held company that is seeking to terminate his or her employment relationship, the Arbitrator unjustifiably relied solely on *Centro*. Unlike the *Global Minerals* case, *Centro* simply has no bearing on the duties and obligations owed by an officer, director and/or shareholder that is seeking to terminate his or her employment with a closely held company.

15

Byrd, Pfister and Todaro were senior officers and directors of AAT. Accordingly, those Respondents-Appellees absolutely owed a fiduciary duty to AAT to disclose any information that could reasonably bear on AAT's consideration of a proposed settlement and/or release agreement in connection with the negotiation and execution of the Termination Agreement. While the Arbitrator concluded that Respondents-Appellees actively engaged in the formation, preparation, development and execution of Flowcastings between March 2011 and September 2011 (during the 6 months prior to the execution of the Termination Agreement), the Respondents-Appellees made no effort whatsoever to disclose Flowcastings (and/or their activities with respect thereto) to AAT while negotiating (and then executing) the Termination Agreement. Without question, AAT would not have provided a release of all claims (including fraud claims) in Respondents-Appellees' favor had Respondents-Appellees disclosed Flowcastings to AAT. Clearly the Arbitrator rendered an inappropriate Award which completely disregarded the controlling standard for setting aside a release agreement between senior officers and their employer.

## The Arbitrator Engaged in Manifest Disregard of the Law

For substantially the same reasons the Award should be vacated because the Arbitrator exceeded his powers, so should the Award be vacated as a result of the

Arbitrator's manifest disregard of the applicable law.[3]  First, the Arbitrator knew of the governing contract provisions of the Termination Agreement that he summarily rejected and refused to apply.   Second, AAT extensively briefed *Global Minerals* in its motion for summary judgment and in its post-hearing brief, Verified Petition, which the Arbitrator subsequently rejected in relying, instead, solely on *Centro*. The Arbitrator was also aware of New York law that precludes awarding fees unless a party to the arbitration pursues same in the arbitration and/or the governing agreement provides for fees.  Indeed, the [Termination] Agreement is *not* silent on the subject, but in fact states, in ¶ 10(d), as Claimants emphasize, that "the parties will bear their own costs, expenses, and attorneys' fees."

Notwithstanding the Arbitrator's undeniable knowledge regarding each of these pertinent contract provisions and guiding legal principals, the Arbitrator refused to apply same and/or wholly rejected the law altogether.  Given the vast case law both citing and analyzing the aforementioned authorities, it cannot be disputed that the law ignored by the Arbitrator was well defined, explicit, and clearly applicable to the case.  Thus, the District Court should have vacated the Award as a result of the Arbitrator's manifest disregard of the law.

---

[3] The District Court correctly held that Manifest disregard can be found when a review court "find[s] both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."  (14).  This precisely the situation here.

For these reasons, and those set forth below, the District Court's decision granting Respondents-Appellees' motion to dismiss and confirming the Award should be reversed and the Award should be vacated.

## STANDARD OF REVIEW

The Court reviews a motion to dismiss pursuant to Fed. R. Civ.P. 12(b)(6) *de novo*. *See Jaghory v. New York State Department of Education*, 131 F.3d 326, 329 (2d Cir. 1997); *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 125 (2d Cir. 2001).

This Court reviews a district court's decision to confirm an arbitration award *de novo* to the extent it turns on legal questions, and reviews any findings of fact for clear error. *See Duferco Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003); *Pike v. Freeman*, 266 F.3d 78, 86 (2d Cir. 2001).

## ARGUMENT

**I.    THE DISTRICT COURT SHOULD HAVE VACATED THE FINAL AWARD BECAUSE THE ARBITRATOR EXCEEDED HIS AUTHORITY IN THE ARBITRATION**

In its Opinion, the District Court correctly acknowledged that pursuant to CPLR §7511, an arbitration award "***shall*** be vacated . . . if the court finds that. . . the arbitrator . . . exceeded his power." CPLR §7511(b)(1)(iii)(emphasis added). While courts are generally deferential to arbitration awards, this Court has cautioned that the deferential treatment given to arbitration awards is not limitless.

*Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990) ("This great deference ... is not the equivalent of a grant of limitless power.")  Here, the impact of this rule is especially important because the express terms of the Termination Agreement expressly limits the  power of the Arbitrator to award attorneys fees by providing that the parties "will bear their own costs, expenses, and attorneys' fees..."  (A111)

Even if Respondents-Appellees were somehow entitled to recover their attorneys' fees and costs incurred in the Arbitration, which they are not, Respondents-Appellees failed to meet their burden of proof for an award of fees. Accordingly, as discussed in detail below, the District Court should have vacated the Award.

> **A.    The District Court Should Have Found That The Arbitrator Exceeded His Power By Awarding Attorneys' Fees To Respondents-Appellees In The Face Of The Explicit Terms Of The Termination Agreement And Unequivocal Case Law To The Contrary**

> **1.    There is no basis to award attorneys' fees and costs to Respondents-Appellees.**

New York law is clear that attorneys' fees may <u>not</u> be awarded in arbitration unless provided for in a statute or the agreement to arbitrate, or if requested by the parties during the arbitration process pursuant to the applicable arbitration rules. *Kidder, Peabody & Co., Inc. v. McArtor*, 223 A.D.2d 502, 503, 637 N.Y.S.2d 99,

100-101 (1st Dep't 1996) (affirming order dismissing claim for attorneys' fees noting "…attorney's fees may not be recovered in an arbitration under New York law unless they are expressly provided for in the arbitration agreement"); *Matza v. Oshman, Helfenstein & Matza*, 33 A.D.3d 493, 494, 823 N.Y.S.2d 47, 48 (1st Dep't 2006) ("However, attorneys' fees may not be awarded in arbitration absent provision therefore in a statute or the agreement to arbitrate, or if requested by the parties during the arbitration process.")

Here, it is undisputed that the agreement to arbitrate -- the Termination Agreement -- does not contain a provision allowing for the award of litigation expenses. To the contrary, Section 10(d) of the Termination Agreement explicitly provides that the parties are responsible for their own attorneys' fees and costs pursuant to Section 10(d) of the Termination Agreement. Section 10(d) of the Termination Agreement provides, as follows:

> Except as specifically set forth herein,[4] the parties will bear their own costs, expenses, and attorneys' fees, whether taxable or otherwise, incurred in or arising out of or in any way related to the matters released herein.

(A111).

Section 5 of the Termination Agreement contains the relevant release provisions. (A109). The law is well settled in New York that such no-fee

---

[4] With the exception of Section 10(d), the Termination Agreement is silent as to attorneys' fees and costs and does not provide any exception to this provision.

20

provisions are appropriate and enforceable. *See Arthur the Dog v. U.S. Merch. Inc.*, No. 05-CV-0958, 2007 WL 2493427, *9 (E.D.N.Y. Aug. 29, 2007) ("The Court agrees with plaintiff that an award of attorneys' fees would not be appropriate under the Agreement, given the plain language of the contract. The Agreement clearly states that such side shall bear its own fees and costs . . . .").

Respondents-Appellees' claim for attorneys' fees arises directly out of and relates to the matters released pursuant to Section 5 of the Termination Agreement and, therefore, falls squarely within the scope of the no-fee provision in Section 10(d). Specifically, in the Arbitration, Respondents-Appellees contended that AAT breached the covenant not to sue set forth in Section 7 of the Termination Agreement when it asserted claims against Respondents-Appellees which were purportedly released under Section 5 of the Termination Agreement. [5] Undoubtedly, the covenant not to sue pursuant to which Respondents-Appellees sought attorneys' fees directly relates to the release provision set forth in the Termination Agreement. It is impossible to consider the covenant not to sue claim without analyzing the claims released under the Termination Agreement. Because an award of attorneys' fees for any matter arising from or relating to the release is precluded under Section 10(d) of the Termination Agreement, the Arbitrator was

---

[5] Section 7 of the Termination Agreement specifically provides that AAT agrees not to sue "with regard to any or all claims released herein." (A110)

21

wholly precluded from awarding Respondents-Appellees their attorneys' fees and costs and the District Court should have vacated the Award.

Additionally, because AAT did not pursue a claim for attorneys' fees and costs during the arbitration process (*see* A31 Partial Award, ¶ 4.30), and there is no statute that provides for an award of such damages in this matter, the Arbitrator had <u>no</u> <u>authority</u> whatsoever to grant Respondents-Appellees an award of fees and costs under New York law and the District Court should not have confirmed the Award. *See Matza*, 33 A.D.3d at 494, 823 N.Y.S.2d at 48 (holding award of attorney fees in arbitration award was unauthorized); *Schwimmer v. Malinas*, No. 6320/12, 2013 WL 452792, *14 (Sup. Ct. Kings County Jan. 30, 2013) (declining to confirm award of attorneys' fees noting ". . . because the arbitration agreement failed to provide for attorneys' fees and other legal expenses, 'the arbitrators exceeded the scope of their powers [by awarding attorneys' fees]. . . .'"). Stated another way, the Award directly conflicts with the established law in New York that fees cannot be awarded in arbitration absent circumstances that do not exist here and, therefore, must be vacated. *See City of Oswego v. Oswego City Firefighters Assoc.*, 21 N.Y.3d 880, 834, 965 N.Y.S.2d 764 (2013) (vacating arbitration award that conflicted with statutory law); *see also In re Adirondack Beverages Corp.*, 108 A.D.3d 832, 968 N.Y.S.2d 711 (2013) ("Here, Supreme Court properly concluded that the arbitrator exceeded a specifically enumerated

limitation on his power by failing to recognize the [terms] as outlined in the [collective bargaining agreement] . . . .the arbitrator ignored a specifically enumerated limitation on his power and effectively modified, added to or subtracted from the terms of the CBA.").

Accordingly, the District Court should have vacated the Award and denied Respondents-Appellees' motion to dismiss and confirm the award.

### 2.     The Arbitrator exceeded his authority by applying the "*Artvale* rule" – an inapplicable Federal doctrine – to award Respondents-Appellees their attorneys' fees and costs.

Ignoring the established law and the clear and unambiguous language of Section 10(d) of the Termination Agreement, the Arbitrator, at Respondents-Appellees' urging, relied on the so-called "*Artvale* rule" to award Respondents-Appellees their attorneys' fees and costs.  (*See* A52)  In *Artvale, Inc. v. Rugby Fabrics Corp.* ("*Artvale*"), the Second Circuit held that a party who commences litigation in breach of a covenant not to sue is liable for the non-breaching party's costs and attorneys' fees *if* (i) the contract is silent as to attorneys' fees and costs, *and* (ii) the lawsuit was brought in obvious breach or otherwise in bad faith.  363 F.2d 1002, 1008 (2d Cir. 1966); *see also Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 586 F. Supp. 1286, 1288 (S.D.N.Y. 1984)("… whether the breach of a covenant not to sue entitles the injured party to recover litigation expenses from his

23

adversary depends upon what the parties intended by their contract.") (quotations omitted); *Kamfar v. New World Rest. Group, Inc.*, 347 F. Supp.2d 38, 51 (S.D.N.Y. 2004)(". . . a defendant normally may not recover damages – i.e., litigation expenses – for breach of a covenant not to sue unless the parties specifically intended such recovery.")

Ignoring that the Termination Agreement is <u>not</u> silent regarding litigation expenses (and therefore *Artvale* does not even apply), the Arbitrator awarded Respondents-Appellees over $300,000 in attorneys' fees and costs. (*See* A53) The Award to Respondents-Appellees for fees and costs, however, necessarily fails on its face as Section 10(d) of the Termination Agreement specifically governs Respondents-Appellees' request for attorneys' fees and costs (thus rendering *Artvale* inapplicable) and precluded an award in Respondents-Appellees' favor.

Even assuming *arguendo* that the Termination Agreement was silent as to attorneys' fees and costs (which it is not), *Artvale* and its progeny do not control the present matter. Section 10(b) of the Termination Agreement provides that "[The] Agreement shall be governed by and construed in accordance with the laws of the State of New York . . . ." (A111) In addition, the enforceability of contracts is generally a question of state law. For these reasons, New York state law should be applied in order to determine the enforceability of the Termination Agreement and its provisions. *See Arthur the Dog*, *supra*, 2007 WL 2493427 at *3 ("As '[t]he

enforceability of contracts generally is a question of state law, not federal law,' New York [s]tate Law 'should be applied in order to determine the enforceability of the agreement.'")(citations omitted).    *Artvale* and its progeny, however, represent federal common law as confirmed by the relevant federal case law.  *See Kamfar*, 347 F. Supp.2d at 51 (". . .  subsequent cases implicitly or explicitly have treated *Artvale* as expressing the Second Circuit's view of New York law on this issue.").  Indeed, *Artvale* appears never to have been endorsed by the New York state courts.  *See Versatile Housewares & Gardening Sys., Inc.*, 819 F. Supp.2d 230, 245 (S.D.N.Y. 2011)("*Artvale* and its progeny are generally taken to be the Second Circuit's view on New York law, but *Artvale* appears **never to have been endorsed by the New York [S]tate courts.**")(emphasis added) (citations omitted).

The Arbitrator, therefore, is bound by well established New York state law that attorneys' fees may ***not*** be awarded in arbitration unless provided for in a statute, the agreement to arbitrate, or if requested by both parties during the arbitration process.  Respondents-Appellees are simply not entitled to an award of litigation expenses pursuant to the terms of the Termination Agreement or controlling New York law.  The Arbitrator, therefore, exceeded his authority in granting Respondents-Appellees' attorneys' fees and costs under the *Artvale* doctrine.

### 3. Even if the *Artvale* doctrine applied to the Arbitration, the Arbitrator still exceeded his authority by awarding Respondents-Appellees their attorneys' fees and costs.

Finally, even if the federal court-endorsed *Artvale* doctrine was found to be applicable to contractual disputes and enforceability issues governed by New York state law, Respondents-Appellees would still not be entitled to an award of attorneys' fees because the Termination Agreement is not silent on attorneys' fees and costs. (*See* A111) In addition, because AAT did not commence litigation or file its arbitration demand in bad faith or in obvious breach of the Termination Agreement, Respondents-Appellees' claim fails under both prongs of the *Artvale* doctrine.

In the arbitration, AAT asserted that the Termination Agreement should be "voided or rescinded as having been fraudulently induced or procured by fraudulent representations." (*See* A13*)*. Respondents-Appellees filed a counterclaim seeking a declaration that the Termination Agreement should be enforced, that AAT's claims were released under the Termination Agreement, and that Respondents-Appellees were entitled to attorneys' fees and costs in defending against AAT's actions. *See id.*

The issue of the validity of the Termination Agreement was posed to the Arbitrator through dispositive motions for summary judgment submitted by both parties. (A13) Determining that material issues of fact existed precluding

26

summary judgment, the Arbitrator denied all of the parties' summary judgment motions, including Respondents-Appellees' motion to strike AAT's claims and on its affirmative counterclaim, and required an evidentiary hearing to adjudicate the parties' respective claims.[6] (*See id*).  After seven (7) days of testimony from thirteen (13) witnesses including two (2) expert witnesses, the Arbitrator entered the Partial Final Award.  However, in light of the Arbitrator's determination that material issues of fact existed thereby precluding summary judgment, there simply can be no finding that AAT commenced litigation or filed its arbitration demand in bad faith and/or in obvious breach of the Termination Agreement.  *See Lubrizoil Corp. v. Exxon Corp.*, 957 F.2d 1302, 1303 (5th Cir. 1992) (holding that the district court properly granted defendants' summary judgment motion on their affirmative claim for breach of the covenant not to sue contained in the parties' settlement agreement as the breach was obvious).  In fact, the Arbitrator explicitly found that beginning in March 2011, there began a "concerted effort" among the Respondents-Appellees and other former AAT employees to leave AAT for Flowcastings, (*see* A37), and that Respondents-Appellees did not deny that: (i)

---

[6] Respondent Pfister's cross-motion for summary judgment was unopposed and granted on the condition that he agree, if called, to testify in the arbitration. (A13).  Because Pfister is a party to the Termination Agreement pursuant to which he agreed, as did other Respondents-Appellees, to bear his own attorneys' fee and costs, for all of the reasons the Arbitrator exceeded his authority in granting Respondents their attorneys' fees and costs, the Arbitrator exceeded his authority awarding fees in favor of Pfister in connection with the granting of his cross-motion in the Partial Final Award.

Flowcastings' domain name was registered on March 31, 2011; (ii) Flowcastings' logo was designed for it on April 2, 2011, that the Flowcastings' website was registered on March 31, 2011; and (iii) Flowcastings was registered as a company by Todaro on May 19, 2011.  (A3)

The Arbitrator also noted that, between March 14, 2011 and July 21, 2011, Respondents-Appellees: (i) began testing various molds for Flowcastings; (ii) 'spec[ed]' equipment for Flowcastings; (iii) secretly discussed "stalling AAT Managing Directors' offer to become General Manager of AAT"; (iv) "submitted Flowcastings' cost of goods to MTU"; (v) submitted quotes to "MTU for parts made by Flowcastings"; and (vi) identified "EQ heat shield Flowcastings is making for MTU".  (*See* A32).  Considering that these facts suggest that Respondents-Appellees, at a minimum, engaged in bad faith and deceptive conduct, it should be abundantly clear that AAT did not initiate the action in bad faith.  To the contrary, subsequent to the execution of the Termination Agreement, AAT had uncovered a large number of facts that clearly justified its good faith attempt to overturn the Termination Agreement so as to be in a position to seek redress from Respondents-Appellees for what AAT believed in good faith to be Respondents-Appellees' improper conduct.  (*See* A68).

Accordingly, the Arbitrator unquestionably exceeded his authority in his completely unsupported, nonsensical interpretation of the Termination Agreement

28

and governing case law, including his application of *Artvale* and rejection of well established New York state law.  For all of these reasons, AAT's petition to vacate the Award should have been granted by the District Court.

> **B.    Even if Respondents-Appellees Were Entitled to an Award for their Attorneys' Fees and Costs Incurred in the Arbitration, Which They are Not, the Arbitrator Still Exceeded His Authority in Awarding $302,165.55 to Respondents-Appellees.**

Even if Respondents-Appellees were somehow entitled to recover their attorneys' fees and costs incurred in the Arbitration, which they are not, Respondents-Appellees failed to meet their burden of proof for an award of fees. *See* § I(B)(1), *infra*.  In addition, Respondents-Appellees failed to properly allocate their fees and costs incurred in the Federal Actions and Arbitration to reflect legal services that were provided on behalf of non-Respondent parties, including Flowcastings.  In fact, Respondents-Appellees admitted in their post-Arbitration submission dated May 29, 2013 that Flowcastings paid for Respondents-Appellees' legal fees.  As a result, the Arbitrator wholly exceeded his authority by awarding over $300,000 in attorneys' fees to Respondents-Appellees.  Although fully briefed before the District Court by AAT, these arguments were not addressed by either the Court or Respondents-Appellees.

**1.** **Respondents-Appellees Failed To Properly Allocate Fees and Costs Incurred in the Federal Actions and Arbitration to Reflect Those Legal Services That Were Provided On Behalf Of Non-Respondent Parties and Respondents-Appellees Admitted That Flowcastings Paid All Legal Fees.**

Respondents-Appellees' Statement of Fees should have been rejected by the Arbitrator because they failed to properly allocate attorneys' fees and costs that fall outside of the scope of the Final Award. Stated another way, Respondents-Appellees failed to establish that the $302,165.55 in attorneys' fees and costs were incurred as a result of services rendered solely on behalf of and for Respondents-Appellees' benefit, and not on behalf of or for the benefit of any other non-respondent party named in the Federal Actions.

Respondents-Appellees, and the Arbitrator, completely ignored that the crux of the Federal Actions involved AAT seeking injunctive relief against Flowcastings, the primary defendant in the Federal Actions and a non-party to the Termination Agreement. (A74) As a result, the majority of Respondents-Appellees' fees incurred in the Federal Actions necessarily relate to AAT's applications for injunctive relief against Flowcastings. Since Flowcastings is a not a party to the Termination Agreement, the provisions thereof are inapplicable to any proceeding commenced by AAT against Flowcastings. Accordingly, there are

no grounds whatsoever to require AAT to reimburse Flowcastings for *any* of its legal costs.

Respondents-Appellees, the Arbitrator, and the District Court likewise ignored that the Federal Actions named numerous defendants that are <u>not</u> parties to the Arbitration.[7]   For example, the New York Action was filed against Respondents-Appellees Todaro and Byrd and nine (9) other defendants.   The Illinois Action was filed against Todaro and Byrd as well as seven (7) other defendants.  Thus, to the extent legal services performed on behalf of Respondents-Appellees benefited any of the non-respondent defendants in the Federal Actions, such attorneys' fees and costs associated with said service must be allocated to reflect the dual-benefit of those services.

In fact, a cursory review of the expert's invoices submitted by Respondents-Appellees in support of their submission demonstrated that Respondents-Appellees in fact sought attorneys' fees and costs for services rendered on behalf of non-respondent defendants in violation of the Final Award.   For example, in his Affidavit, Respondents-Appellees' expert, D. James Papegeorgiou, certified that

---

[7] Flowcastings was the primary defendant in the Federal Actions where AAT sought to prevent Flowcastings from using AAT's confidential information and intellectual property that were improperly acquired by Flowcastings.  AAT has the unrestricted and unfettered right to seek injunctive and other relief against Flowcastings (which is not a party to the Termination Agreement) and the right under Section 10(c) of the Termination Agreement to seek injunctive relief against Respondents pending conclusion of the arbitration proceeding.

his total fees billed through September 17, 2012 total $8,030.91. (A223-227)  As a result, Respondents-Appellees include in their request for attorneys' fees and costs $8,030.91 for services rendered by Mr. Papegeorgiou. (A151)

However, upon reviewing Mr. Papegeorgiou's invoice for services rendered through September 30, 2012, attached as Exhibit A to his Affidavit, it is clear that included in Respondents-Appellees' demand for $8,030.91 are fees incurred in connection with services rendered on behalf of Daniel Abbasi (the President of Flowcastings and a defendant in both the New York Action and Illinois Action) and Ramsay Ravenel (a defendant in the Illinois Action), neither of whom were a party to this Arbitration and both of whom fall clearly outside of the Arbitrator's award for attorneys' fees and costs.  (*See* A228-229).  Absent from Respondents-Appellees' Submission was any indication that Respondents-Appellees deducted fees from the requested $8,030.91 incurred on behalf of or relating to services rendered for Mr. Abbasi and Mr. Ravenel in clear violation of the Final Award.

Similarly, Respondents-Appellees also omitted from their submission any reference to Flowcastings, Respondents-Appellees' company and a non-respondent defendant in the Federal Actions, which admittedly funded all of Respondents-Appellees' purported fees in connection with the Federal Actions and/or this Arbitration.  This included the fees and costs relating to AAT's applications for

injunctive relief against Flowcastings and its affiliates which are not recoverable under the Final Award.

Moreover, Respondents-Appellees failed to address any purported "loan" agreement requiring Respondents-Appellees to reimburse Flowcastings for those attorneys' fees and other expenses paid to date by Flowcastings.  There was absolutely no basis to grant Respondents-Appellees a windfall by allowing them to recover fees and costs which were actually paid by Flowcastings by virtue of the fact that Flowcastings is the party that engaged counsel in connection with the Federal Court Actions and the Arbitration.  Accordingly, the Arbitrator exceeded his authority by awarding Respondents-Appellees over $300,000 in attorneys' fees that were incurred by Flowcastings and paid by Flowcastings.

### 2.     Pfister likewise failed to demonstrate that he was entitled to $8,889.64 in attorneys' fees and costs.

Pfister similarly sought $8,889.64 in attorneys' fees and costs relating to his summary judgment motion in this Arbitration.  (A230-A240).  Pfister, however, like Respondents-Appellees, failed to demonstrate that the demanded attorneys' fees were reasonable.  Pfister's purported fees were also incurred after the cut-off date (September 17, 2012) for Respondents-Appellees' fees and costs. Considering the Respondents-Appellees' request for fees and costs after September 17, 2012 have been rejected by the Arbitrator because AAT asserted a viable claim

to set aside the release provisions of the Termination Agreement, Pfister's request for fees and costs incurred after September 17th should have been rejected and/or reduced to reflect a more reasonable amount by the Arbitrator. Instead, the Arbitrator ignoring all of the foregoing, entered the Final Award in Pfister's favor for $8,889.64 in attorneys' fees. Thus, like the Arbitrator's failure to reject Respondents-Appellees' Statement of Fees, the Arbitrator exceeded his authority by awarding Pfister $8,889.64.

### 3.  **The Arbitrator also exceeded his authority by ignoring AAT's right to seek injunctive relief pursuant to Section 10(c) of the Termination Agreement.**

As stated above, the Arbitrator imposed September 17, 2012 as the cut-off date for Respondents-Appellees' fees and costs. This cut-off date, however, is arbitrary and illogical considering Section 10(c) of the Termination Agreement expressly authorized AAT to seek injunctive relief to prevent irreparable harm pending the conclusion of the arbitration proceeding, which was commenced in February 2012. *See* A111 ("Nothing in this Agreement is intended to prevent any party from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration."). The September 17, 2012 cut-off date further illustrates the Arbitrator's disregard of the Termination Agreement and abuse of his authority in the Arbitration and required the District Court to grant AAT's Petition.

## II.     THE DISTRICT COURT SHOULD HAVE VACATED THE FINAL AWARD BECAUSE THE ARBITRATOR EXCEEDED HIS POWER AND RENDERED AN IRRATIONAL AWARD THROUGH HIS DISREGARD OF THE *GLOBAL* CASE.

The Arbitrator further exceeded his authority by ignoring *Global Minerals* and, instead, applying *Centro* to determine the underlying claims in the Arbitration.  (*See* A16) ("The standard for invalidating a release under New York law is set forth and analyzed in the recent Centro case.").  *Global Minerals* is directly on point and should have governed the outcome of the Arbitration, not *Centro*, with respect to the fiduciary obligations owed by Byrd, Todaro and Pfister (as senior officers and directors of AAT) to AAT in connection with the negotiation and execution of the Termination Agreement.  Thus, the Arbitrator's rejection of *Global Minerals* exceeded his authority in the Arbitration and militates the vacating of the Award and the Arbitrator's decision.

In *Global Minerals*, the plaintiff-entity alleged it was fraudulently induced by one of its four shareholders into signing a general release and severance agreement worth $15 million.  The defendants moved for summary judgment, arguing that the plaintiff's causes of action were barred by the general release executed by defendants in connection with the parties' severance and termination agreement.  The motion court granted summary judgment in favor of the defendants and dismissed the complaint, finding that despite the entity-plaintiff's

35

notice of the facts relating to the defendant-shareholder's wrongdoing, the corporation failed to fulfill its duty to investigate those acts, making its alleged reliance on the misrepresentations in entering into the settlement and release unreasonable.

On appeal, the First Department affirmed the motion court's decision noting that New York law imposes an affirmative duty on sophisticated investors to protect themselves from misrepresentations made during business acquisitions by investigating the details of the transactions and the business they are acquiring. *Global Minerals*, *supra*, 35 A.D.3d at 100, 824 N.Y.S.2d at 215. Because the plaintiff-entity failed to investigate, the Court affirmed the lower court's decision. *See id.* In its opinion, however, the *Global Minerals* Court held that the defendant-shareholder "owed a fiduciary duty to Global arising out of his status as a corporate officer and director." *Global Minerals*, 35 A.D.3d at 98, 824 N.Y.S.2d at 214. The Court further concluded that "[t]his is a sensitive and inflexible rule of fidelity, barring not only blatant self-dealing but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interests of those owed a fiduciary duty." *Id.* Finding that "these fiduciary duties were not extinguished by [the shareholder's] acrimonious relationship with Global until he withdrew from the corporation," the Court held that the shareholder, "<u>in negotiating his severance, was obligated to disclose any information that could</u>

reasonably bear on plaintiff's consideration of his [settlement and release] offer."
*Id.*

Unlike the entity in *Global Minerals*, AAT absolutely satisfied its duty to investigate Respondents-Appellees' actions. *See* Verified Petition, (A69, 70) More importantly, however, is the *Global Minerals* Court's confirmation that Respondents-Appellees, like the shareholders in *Global Minerals*, had the affirmative duty, as fiduciaries of AAT, to disclose "any information that could reasonably bear on [AAT's] consideration of [the Termination Agreement." *Global Minerals*, 35 A.D.3d at 98, 824 N.Y.S.2d at 214. Instead, Respondents-Appellees did not disclose their activities to AAT and, when directly asked, denied moonlighting while with AAT. (A69) It cannot be denied that AAT satisfied its duty to investigate Respondents-Appellees' actions but, more importantly, that Respondents-Appellees absolutely failed to satisfy their duty to disclose their conduct and activities with respect to Flowcastings in connection with the negotiation and execution of the Termination Agreement with AAT.

The Arbitrator completely ignored the law set forth in *Global Minerals* (and failed to identify the *Global Minerals* case in his Award) and, instead, relied solely on *Centro* in determining that the Termination Agreement was valid and enforceable. (*See* A37) In fact, neither the Partial Award nor the Final Award mention *Global Minerals* at all. (*See* A7-A55) Rather, the Arbitrator relied solely

on the *Centro* case which simply had nothing to do with the negotiation of an employment termination agreement between senior officers and their employer.[8] The Arbitrator focused his analysis solely on the "thoroughness" and completeness of AAT's investigation and ignored that the purpose of the investigation was to determine whether Flutto and others at AAT were moonlighting and working at Cofundit.  (*See id*)  AAT, however, had no reason to suspect at the time that Respondents-Appellees had formed a competing business.

In addition, because Respondents-Appellees lied about moonlighting, (*see* A69), AAT would not have discovered Flowcastings no matter how complete or thorough its investigation.  Rather, the only way AAT could have discovered the unknown fraud was if Respondents-Appellees told the truth and complied with their fiduciary obligations to disclose to AAT their involvement and activities with Flowcastings.  *Global Minerals* directly addresses this issue and confirms a fiduciary's obligation to disclose such activity and should have been applied by the Arbitrator in determining the Arbitration.  Stated another way, there is no plausible reason under New York law to impose the duty to investigate on AAT, as the

---

[8] The *Centro* case involved an action brought by sellers of a minority interest of a company against the majority owners alleging they were fraudulently induced to sell to and release the purchasers from unknown fraud claims.  See *Centro*, 17 N.Y.3d at 272. Unlike the facts in *Centro*, the Arbitration involved Respondents' execution of a Termination Agreement with AAT (their former employer) and their absolute failure to provide any disclosure of their pre-Termination Agreement activities with respect to a new business (Flowcastings) as required by their fiduciary duties to AAT.  See *Global*, 35 A.D.3d at 98.

Arbitrator did here, given Respondents-Appellees' failure to disclose the truth.  *See also Warner Theatre Assocs. L.P. v. Metropolitan Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) ("New York law only precludes reliance sufficient to prove fraud when a plaintiff could have learned the truth without undue effort but nevertheless fails to inquire.").  Indeed, the Arbitrator's decision turned the law on its head, implying that *AAT* had the obligation to presume that Respondents-Appellees were engaged in deceptive practices notwithstanding their answer to the contrary and notwithstanding that there were no circumstances to support such a conclusion. (A31, 37) ("Given Claimants' admitted suspicions, and the distrust between the parties and disagreements that had developed, AA T should have committed the resources to discover the facts that AAT now claims should not be covered by the release.").

Given the law as set forth by the First Department and Respondents-Appellees' obligations to truthfully disclose their involvement with Flowcastings in negotiating the Termination Agreement (which contained a mutual release), the Arbitrator's total disregard of *Global Minerals* and sole reliance on *Centro* exceeded the Arbitrator's authority in the Arbitration.  Consideration of the *Global Minerals* case by the Arbitrator would have resulted in an Award that set aside the release provisions set forth in the Termination Agreement, by virtue of Respondents-Appellees' clear breach of fiduciary duties to AAT in failing to make

any disclosure whatsoever of Flowcastings or their pre-Termination Agreement activities with respect to Flowcastings. Thus, the Final Award should be vacated, including the Arbitrator's decision denying AAT's claims for fraudulent representation and fraudulent inducement as released by the Termination Agreement. (*See* A40) ("AAT's claims for fraudulent representation and fraudulent inducement are hereby denied as having been released by the Settlement Agreement.").

### III. THE DISTRICT COURT SHOULD ALSO HAVE VACATED THE AWARD AS A RESULT OF THE ARBITRATOR'S MANIFEST DISREGARD OF THE LAW

For substantially the same reasons the Award should be vacated because the Arbitrator exceeded his powers, so should the Award be vacated as a result of the Arbitrator's manifest disregard of the applicable law.

The District Court correctly held that to modify or vacate an award on the ground of manifest disregard of the law, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Transparent Value, L.L.C. v. Johnson*, 93 A.D.3d 599, 601, 941 N.Y.S.2d 96 (1st Dep't 2012), citing *Wien & Malkin LLP v. Helmsley–Spear, Inc.*, 6 N.Y.3d 471, 480, 813 N.Y.S.2d 691 (2006), *cert. dismissed* 548 U.S. 940, 127 S.Ct. 34, 165 L.Ed.2d 1012 (2006).

Although initially a ground to vacate an arbitration award under Federal law, several Supreme Court and Appellate Division cases support New York's recognition of "manifest disregard" as a basis for the vacation of an arbitral award. *See Sawtelle v. Waddell & Reed,* 304 A.D.2d 103, 754 N.Y.S.2d 264 (1st Dep't 2003); *Cohen v. Ark Asset Holdings, Inc.,* 302 A.D.2d 209, 755 N.Y.S.2d 37 (1st Dep't 2003), *Bart v. Miller,* 302 A.D.2d 379, 754 N.Y.S.2d 559 (2d Dep't 2003), *UBS Warburg, LLC v. Auerbach,* 294 A.D.2d 245, 744 N.Y.S.2d 364 (1st Dep't 2002), *Spear Leeds & Kellogg v. Bullseye Securities, Inc.,* 291 A.D.2d 255, 738 N.Y.S.2d 27 (1st Dep't 2002), *Stewart Tabori & Chang, Inc. v. Stewart,* 282 A.D.2d 385, 723 N.Y.S.2d 492 (1st Dep't 2001) and *R.C. Layne Construction, Inc. v. Stratton Oakmont, Inc.,* 228 A.D.2d 45, 651 N.Y.S.2d 973 (1st Dep't 1996).  For example, in *Spear Leeds & Kellogg v. Bullseye Securities, Inc., supra,* the First Department, in a memorandum decision, affirmed the vacation of an arbitral award by the Supreme Court on three grounds: (1) that the arbitration panel exceeded its authority, (2) that the award was irrational, and (3) that there was a manifest disregard of law.  The District Court below also recognized the manifest disregard standard as a basis to vacate an arbitration award, although it applied it incorrectly in rejecting AAT's arguments.

Here, the Arbitrator knew of the governing contract provisions of the Termination Agreement that he summarily rejected and refused to apply.  For

41

example, in paragraph 3.1.1 of the Award, the Arbitrator expressly cites Section 10(d) of the Termination Agreement (and then, in the next breath, awards over $300,000 in attorneys' fees to Respondents).  (*See* A51)("Costs and fees may not be recovered absent provision in the Agreement permitting such recovery.  ¶ 10(d) disallows such recovery in connection with "matters released" in ¶ 5 or as otherwise specifically provided.").

Second, AAT extensively briefed *Global Minerals* in its motion for summary judgment and in its post-hearing brief, Verified Petition, ¶ 40, which the Arbitrator subsequently rejected in relying, instead, solely on *Centro*.  *Id.* at ¶ 39. The Arbitrator was also aware of New York law that precludes awarding fees unless a party to the arbitration pursues same in the arbitration and/or the governing agreement provides for fees.  (*See* A46-47) ("Nevertheless, it is clear under New York law that attorneys' fees may generally not be recovered in arbitration absent provision thereof in the parties' agreement.   Indeed, the [Termination] Agreement is <u>not</u> silent on the subject, but in fact states, in ¶ 10(d), as Claimants emphasize, that 'the parties will bear their own costs, expenses, and attorneys' fees.'").

Notwithstanding the Arbitrator's undeniable knowledge regarding each of these pertinent contract provisions and guiding legal principals, the Arbitrator refused to apply same and/or wholly rejected the law altogether.  *See* § I, *supra*.

Given the vast case law both citing and analyzing the aforementioned authorities, it cannot be disputed that the law ignored by the Arbitrator was well defined, explicit, and clearly applicable to the case.  Thus, for all of these reasons, the Award should further be vacated pursuant to CPLR § 7511(B)(1) as a result of the Arbitrator's manifest disregard of the law.

## CONCLUSION

For the foregoing reasons, AAT respectfully submits this Court should reverse the decision of the District Court and vacate the Final Award entered by the Arbitrator in this matter.

Respectfully Submitted,

DATED:  New York, New York            COLE, SCHOTZ, MEISEL,
         August 28, 2014            FORMAN & LEONARD, P.A.

By: /s/ *James T. Kim*
James T. Kim
900 Third Avenue, 16th Floor
New York, New York 10022
(212) 752-8000

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).  Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), the brief contains 9,515 words.

The brief has been prepared in proportionally spaced typeface using Microsoft Word 2003 in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(B), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ James T. Kim
James T. Kim, Esq.

# SPECIAL APPENDIX

# TABLE OF CONTENTS

**Page**

Opinion, Filed April 16, 2014.................................................................. SPA1

Notice of Appeal, Filed May 16, 2014 .................................................... SPA20

Judgment, Filed May 19, 2014 ............................................................... SPA21

Amended Notice of Appeal, Filed May 27, 2014................................... SPA24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

ADVANCED AEROFOIL TECHNOLOGIES, AG, a
Swiss Corporation, ADVANCED AEROFOIL
TECHNOLOGIES, INC., a Delaware                    13 Civ. 7181 (RWS)
Corporation, and ADVANCED AEROFOIL
TECHNOLOGIES GMBH, a German Corporation              OPINION

                    Petitioners,

    - against -

THOMAS TODARO, ADVANCED ENGINEERING
TECHNNOLOGIES, INC., ANTHONY CHALDER,
MARK TARBY, CHARLES BYRD, and DENNIS
PFISTER

                    Respondents.

----------------------------------------X

A P P E A R A N C E S :

        Attorneys for the Petitioners

        COLE SCHOTZ MEISEL FORMAN & LEONARD, PA
        25 Main Street, Court Plaza North
        Hackensack, NJ 07601
        By:  Leo V. Leyva, Esq.
             James T. Kim, Esq.
             Lauren M. Manduke, Esq.

        Attorneys for the Respondents

        YOUNG & ASSOCIATES
        27725 Stansbury Blvd., Suite 125
        Farmington Hills, MI 48334
        By:  Jaye Quadrozzi, Esq.

**Sweet, D.J.**

Respondents Thomas Todaro ("Todaro"), Advanced Engineering Technologies, Inc. ("AET"), Anthony Chalder ("Chalder"), Mark Tarby ("Tarby"), Charles Byrd ("Byrd"), and Dennis Pfister ("Pfister") (collectively the "Respondents") have moved to dismiss the Petition to Vacate the Arbitration Award ("Petition") submitted by Petitioners Advanced Aerofoil Technologies AG, Advanced Aerofoil Technologies, Inc. and Advanced Aerofoil Technologies GmbH (collectively the "Petitioners" or "AAT") and to confirm the July 16, 2013 "Award" entered by the International Center for Dispute Resolution ("ICDR") in New York, New York (the "Award") (collectively with the Partial Final Award, dated March 6, 2013 (the "Partial Final Award"), Final Award dated April 22, 2013 (the "Final Award"), the "Awards").

Based on the reasoning below, Respondents' motions are granted and the Award is confirmed.

**<u>Prior Proceedings</u>**

On September 17, 2013, Petitioners filed the Petition in the Supreme Court of New York, New York County. The Petition

1

alleges that the Respondents planned and executed a scheme to start a direct competitor to AAT and to defraud AAT by theft of AAT resources and technologies.  Pet. ¶ 8.  It seeks vacatur of the Award, which awarded damages to Respondents in an arbitration based on the same allegations Petitioners' make in the Petition (the "Arbitration").  On October 10, 2013, the Petition was removed to this Court on diversity jurisdiction grounds.  Respondents filed the instant motion to dismiss on October 11, 2013, and briefing was submitted by both parties.  Oral arguments were held, and the motion was marked fully submitted, on November 26, 2013.

**The Allegations Of the Petition**

The allegations in the Petition relevant to the instant action are as follows:

AAT manufactures precision investment castings for use in the power generation and transportation industries.  Pet. ¶¶ 21-25.  Byrd, Pfister and Todaro are former executive managers and/or officers of AAT.  *Id.* ¶ 8.  Chalder and Tarby are former employees of AAT.  *Id.* ¶ 28.  Petitioners allege that Byrd, Pfister, Todaro, Chalder and Tarby (the "Individual Respondents") formed a direct competitor to AAT, Flowcastings,

2

SPA3

GmbH ("Flowcastings") and planned and executed a scheme to steal AAT's resources, technologies and customers. *Id.* ¶ 8.

The Individual Respondents resigned from AAT from March to June 2011. *Id.* ¶¶ 26, 29. On September 2, 2011, the parties entered a Confidential Termination Agreement (the "Termination Agreement"). *Id.* ¶¶ 4, 30. At the time the Termination Agreement was signed, Petitioners had no knowledge of the existence of Flowcastings or of Respondents' alleged scheme. *Id.* ¶ 30.

The Termination Agreement contains several provisions: (1) a mutual general release of all claims by the parties against each other, as well as a covenant not to sue, *id.* ¶ 6; (2) a requirement that the parties arbitrate any dispute concerning the Termination Agreement, *id.* ¶ 5; (3) a New York choice of law provision, *id.* ¶ 5; and (4) a provision that nothing therein is intended to prevent either party from obtaining injunctive relief to prevent irreparable harm pending the conclusion of arbitration, *id.* ¶ 5. The Termination Agreement also provides that "[e]xcept as specifically set forth herein, the parties will bear their own costs, expenses, and attorneys' fees . . . incurred in or arising out of or in any way related to the matters released herein." Pet. Ex. B,

3

Termination Agreement § 10(d).

        Petitioners learned of the formation of Flowcastings
and the Respondents' alleged conspiracy after the signing of the
Termination Agreement. *Id.* ¶ 32. Consequently, in November
2011, the Petitioners filed a Complaint in the United States
District Court, Northern District of Illinois seeking injunctive
relief against Respondents and their alleged co-conspirators.
*Id.* ¶ 33. The Illinois federal court found that it lacked
personal jurisdiction over the Respondents, and dismissed the
Complaint in November 2011. *Id.* Petitioners then filed a
complaint in the Southern District of New York in December 2011.
*Id.* ¶ 34. That matter was dismissed for lack of subject matter
jurisdiction. *Id.*

        On September 17, 2012, Petitioners submitted a
statement of claims to ICDR and commenced the Arbitration. Pet.
¶ 35. Petitioners sought an award declaring that the
Termination Agreement and release were void and unenforceable,
requiring Respondents to return all property in their possession
belonging to Petitioners and prohibiting Respondents from using
or disclosing Petitioners' confidential and proprietary
information. *Id.* ¶ 35. Respondents in turn submitted
counterclaims in the Arbitration ("Counterclaims"). A sole

arbitrator was appointed (the "Arbitrator") for the Arbitration.

On March 6, 2013, after the submission of evidence and briefing by the parties and a hearing, the Arbitrator delivered the Partial Final Award.    The Partial Final Award determined that "no credible evidence" was presented by AAT to support its claims.    Partial Final Award ¶ 4.12.    It further granted Respondents' counterclaim for a declaration that the Termination Agreement was valid and enforceable.    Pet. ¶ 39; Partial Final Award ¶ 6.2.    The Arbitrator deferred decision on the counterclaim for damages for breach of the Termination Agreement by Petitioners, Respondents attorneys' fees, pending additional briefing.    Pet. ¶ 39.

The parties submitted additional briefing on the issue, in which Petitioners argued that Respondents were not entitled to an award of attorneys' fees or costs in light of the terms of the Termination Agreement, which required the parties to bear their own attorneys' fees and costs.    *Id.* ¶ 41.

On April 22, 2013, the Arbitrator issued the Final Award.    The Final Award rendered judgment against Petitioners and in favor of Respondents on the counterclaim for breach of the Termination Agreement and awarded damages in the form of

costs and reasonable attorneys fees.  *Id.* ¶ 43.  Subsequently, the Award was issued on July 16, 2013, which set out the specific sums Petitioners owed Respondents.  Award ¶¶ 4.1.1-4.8.

**<u>The Applicable Standard</u>**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *County of Suffolk, N.Y. v. First Am. Real Estate Solutions*, 261 F.3d 179, 187 (2d Cir. 2001) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 519 U.S. 808, 117 S. Ct. 50, 136 L. Ed. 2d 14 (1996)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929

SPA7

(2007)).  This is not intended to be an onerous burden, as
plaintiffs need only allege facts sufficient in order to
"nudge[] their claims across the line from conceivable to
plausible." *Twombly*, 550 U.S. at 570.

**The Petition To Vacate The Award Is Denied**

Under both New York State and Federal law, the scope
of judicial review of arbitral awards is narrow.  New York CPLR
article 75 evidences the intent of the New York Legislature
that, once it is clear that a valid agreement to arbitrate has
been made and complied with and that the claim sought to be
arbitrated is not barred by limitations, the authority of the
arbitrator is plenary consistent with the public policy in favor
of arbitration.  *See* N.Y. CPLR § 7501; *Silverman v. Benmor
Coats, Inc.,* 61 N.Y.2d 299, 300, 473 N.Y.S.2d 774, 461 N.E.2d
1261 (1984).  The grounds specified in CPLR § 7511 for vacating
or modifying an arbitration award are few in number and are
narrowly applied.  "Courts are reluctant to disturb the
decisions of arbitrators lest the value of this method of
resolving controversies be undermined." *Goldfinger v. Lisker,*
68 N.Y.2d 225, 230, 508 N.Y.S.2d 159, 500 N.E.2d 857 (1986)
(citations omitted).  Thus, the list of potential objections in
CPLR § 7511(b) and (c) is exclusive. *Geneseo Police Benevolent*

SPA8

*Ass'n, Council 82 v. Village of Geneseo,* 91 A.D.2d 858, 458
N.Y.S.2d 384 (4th Dep't 1982), *aff'd* 59 N.Y.2d 726, 463 N.Y.S.2d
440, 450 N.E.2d 246 (1983).

CPLR § 7511(b)(1) lists several grounds for vacatur:

(b) Grounds for vacating.

1. The award shall be vacated on the application of
a party who either participated in the arbitration
or was served with a notice of intention to
arbitrate if the court finds that the rights of that
party were prejudiced by:

(i) corruption, fraud or misconduct in procuring
the award; or

(ii) partiality of an arbitrator appointed as a
neutral, except where the award was by
confession; or

(iii) an arbitrator, or agency or person making
the award exceeded his power or so imperfectly
executed it that a final and definite award upon
the subject matter submitted was not made; or

(iv) failure to follow the procedure of this
article, unless the party applying to vacate the
award continued with the arbitration with notice
of the defect and without objection.

Petitioners contend that (i) the Arbitrator "exceeded
his power in the Arbitration by, among other things, giving a
completely irrational construction to applicable case law as
well as the provisions of the Termination Agreement that were in
dispute, in effect, making a new contract for the parties, Pet.

8

SPA9

¶ 54, and (ii) because the Arbitrator engaged in a manifest disregard of the law in violation of CPLR § 7511(b)(1).[1] Petitioners contend that the Arbitrator exceeded his powers in the Arbitration by ignoring the applicable provisions of the Termination Agreement that expressly provide that the parties are responsible for their own attorneys' fees and costs, applying federal common law (*i.e.,* the "*Artvale*" doctrine), rather than New York law, in awarding over $300,000 in attorneys' fees to Respondents and disregarding governing law. Pet. Op. at 3. Petitioners' contentions essentially challenge the Arbitrator's choice of law and application of the law to the facts.

An arbitrator will be deemed to have "exceeded his power" within the meaning of CPLR § 7511(b)(1)(iii) only when: (1) the arbitrator has exceeded a specifically enumerated limitation on his authority; (2) the decision is totally irrational; or (3) the award violates a strong public policy. *Board of Educ. of the Dover Union Free School Dist. v. Dover-Wingdale Teachers' Ass'n,* 61 N.Y.2d 913, 915, 474 N.Y.S.2d 716, 463 N.E.2d 32 (N.Y. 1984); *Rochester City Sch. Dist. v.*

---

[1] The "manifest disregard" doctrine is a federal doctrine that allows vacatur of an arbitral award outside of the explicit grounds set in Section 10 of the Federal Arbitration Act ("FAA"). *See Sidarma Societa Italiana Di Armamento Spa v. Holt Marine Indus., Inc.,* 515 F. Supp. 1302, 1306 (S.D.N.Y. 1981). Petitioners' arguments linking manifest disregard to CPLR § 7511 is thus seen as contentions of the Awards' violations of federal law.

*Rochester Teachers Ass'n,* 41 N.Y.2d 578, 582, 394 N.Y.S.2d 179, 362 N.E.2d 977 (N.Y. 1977).

As an initial matter, to the extent Petitioners seek vacatur on the grounds that the Arbitrator lacked the authority to decide the controversy, "[a] party who actively participates in arbitration without seeking a stay pursuant to CPLR 7503(b) waives the right to a judicial determination of the arbitrability of the dispute." *In re Jandrew (Cnty. Of Cortland),* 923 N.Y.S.2d 778, 780 (3d Dep't 2011); *see also Matter of United Federation of Teachers, Local 2, AFT, AFL-CIO v. Board of Educ. of City School Dist. of City of N.Y.,* 801 N.E.2d 827, 1 N.Y.3d 72, 79, 769 N.Y.S.2d 451 (N.Y. 2003); *Rochester City School Dist.,* 362 N.E.2d 977, 41 N.Y.2d 578, 583, 394 N.Y.S.2d 179. Respondents made claims for damages when they filed the Counterclaims. AAT did not seek a stay of the arbitration proceedings in the Arbitration on the basis that the Counterclaims were in excess of the arbitrator's power. Even if the Arbitrator ignored the provisions in the Termination Agreement that prohibits the award of attorneys' fees, Petitioners "waived [their] right to contest the arbitrator's power to decide the controversy." *In re Jandrew,* 923 N.Y.S.2d at 781.

10

Furthermore, "[t]he Court of Appeals has 'stated time and again that an arbitrator's award should not be vacated for errors of law and fact committed by the arbitrator and the courts should not assume the role of overseers to mold the award to conform to their sense of justice.'" *Miro Leisure Corp. v. Prudence Orla, Inc.*, 922 N.Y.S.2d 424 (2d Dep't 2011) (citing *Wien & Malkin LLP v Helmsley-Spear, Inc.*, 6 N.Y.3d 471, 479-480 (N.Y. 2006)). An arbitrator "may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be and making an award reflecting the spirit rather than the letter of the agreement...." *Silverman,* 461 N.E.2d 1261, 61 N.Y.2d at 308, 473 N.Y.S.2d 774.

The Arbitrator clearly made careful consideration of both the language in the Termination Agreement and the law before reaching his conclusion that the Termination Agreement did not bar the Counterclaims. Final Award ¶¶ 2.9-2.11. A review of the Final Award shows that it was carefully reasoned in its rejection of Petitioners' arguments that the Termination Agreement does not allow the recovery of costs and attorneys' fees. *Id.* Specifically, the Arbitrator noted that the Termination Agreement did not contain "an absolute prohibition on the recovery of costs and fees," *id.* ¶ 2.9; concluded that "a claim for attorneys' fees in connection with mandatory

11

arbitration ... may not be recovered," *id.* ¶ 2.10; that the exception in the Termination Agreement "to the preclusion of costs and fees can be and should be read to apply to breaches of the parties' covenants not to sue," *id.*; and that "the parties left open the possibility of claiming reimbursement for costs and fees in connection with judicial litigation and arbitration of claims not relating to matters released in the [Termination] Agreement," *id.* ¶ 2.11. These determinations were well within the Arbitrator's authority.

Petitioners contend that the Arbitrator impermissibly applied *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002 (2d Cir. 1966), since *Artvale* is federal common law and not New York law, and this adoption of federal common law exceeded the Arbitrator's powers.

Notwithstanding that the Arbitrator reached his initial conclusion regarding the permissibility of the Counterclaims based on the language in the Termination Agreement, application of *Artvale* was not an exercise of power in excess of the grant provided to the Arbitrator under the Termination Agreement. *Artvale* is the Second Circuit's view on New York law pertaining to litigation expenses due to a party who breaches a covenant not to sue. 363 F.2d at 1008. *Artvale*

12

has never been endorsed by New York state courts. *See Versatile Housewares & Gardening Sys., Inc.*, 819 F. Supp. 2d 230, 245 (S.D.N.Y. 2010). However, as the Final Award noted, "[b]oth [Petitioners] and Respondents cite[d] the *Artvale* decision to support their arguments," *see* Final Award ¶ 2.13, and in the end the Arbitrator rejected Petitioners' construction of the case, *id.* ¶ 2.20. In doing so, the Arbitrator rejected AAT's claim that it was protected under the "good faith" exception to *Artvale*. *Id.* "An arbitration award must be upheld when the arbitrator 'offer[s] even a barely colorable justification for the outcome reached.'" *Wien & Malkin LLP*, 461 N.E.2d 1261, 6 N.Y.3d at 479, 473 N.Y.S.2d 774. The Arbitrator clearly considered the law in general, *Artvale* specifically and the Petitioners' arguments with respect to *Artvale*. *See* Final Award ¶¶ 2.21-2.26. The Final Award provides more than mere "colorable justification" for its decision, and the Arbitrator did not exceed his power in violation of CPLR § 7511.

With respect to Petitioners' contention that the Arbitrator engaged in manifest disregard of the law, none of the Arbitrator's alleged errors arises to a level that would meet the federal standard. Under the manifest disregard doctrine, an award can be vacated if it exhibits a "manifest disregard of law." *Duferco Intl. Steel Trading v T. Klaveness Shipping A/S*,

13

333 F.3d 383, 388 (2d Cir 2003); *Goldman v Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir 2002) (citing *DiRussa v Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir 1997)). The doctrine is "severely limited" and is the "doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Duferco*, 333 F.3d at 389. It must be "more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law." *Id.* Manifest disregard can be found "only if a reviewing court ... find[s] both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (citations and internal quotation marks omitted).

As an initial matter, insofar as Petitioners' claim manifest disregard based on the insufficiency of the Arbitrator's reasoning in the Awards, "arbitrators are not required to provide an explanation for their decision." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (citation omitted).

14

Petitioners contend that two legal issues, the Arbitrator's application of *Centro Empresarial Cempresa SA v. Am. Movil SAB*, 952 N.E.2d 995, 17 N.Y.3d 269, 929 N.Y.S.2d 2 (N.Y. 2011), and analysis on *Artvale*, constitute manifest disregard of law. Review of the Awards shows Petitioners' contentions are incorrect.

First, the Arbitrator's application of *Centro* fails to meet the high standards for manifest disregard. Petitioners contend that the Arbitrator improperly applied *Centro* and ignored *Global Minerals & Metals Corp. v. Holme*, 35 A.D.3d 93, 824 N.Y.S.2d 210 (1st Dep't 2006), when *Global* was directly on point regarding Petitioners' claims for fraudulent inducement of a release. Pet. Opp. at 7; *see also* Partial Final Award ¶ 4.1. The Awards do not support Petitioners' contention.

Both *Centro* and *Global* were addressed by the parties in their post-hearing briefs. *See* Pet. Opp. at 7; Resp. Reply at 7. The issue as to whether one case or the other applied was thus raised to the Arbitrator. The Partial Final Award also devoted several pages to analyze and explain *Centro's* applicability to the facts. *See* Partial Final Award ¶ 4.1-4.6. Moreover, *Centro* was decided by the New York Court of Appeals and post-dates *Global*, a First Department decision. That the

15

Arbitrator chose to cite to and apply *Centro*, an opinion from the court of "final authority on [New York] state law", *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177, 61 S. Ct. 176, 85 L. Ed. 109 (1940), rather than *Global* does not amount to an "egregious misapplication of legal principles" that would justify a finding of manifest disregard. *See Wallace*, 378 F.3d at 190 ("[M]anifest disregard of law doctrine [is used] to vacate arbitral awards only in the most egregious instances of misapplication of legal principles.").

Second, with regards to the application of *Artvale*, the Arbitrator's decision to apply *Artvale* does not rise to the level of statutory vacatur under CPLR 7511 and thus cannot be manifest disregard for the standard for judicial review for manifest disregard is at least as strict as statutory vacatur. *See Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 515 (2d Cir.), *aff'd* 502 U.S. 942 (1991). In addition, a court must confirm an arbitral award if a justifiable ground for the decision can be inferred even where an explanation for it is deficient or non-existent. *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010); *Wallace*, 378 F.3d at 190 (arbitrators do not need to provide an explanation for their decision); *Willemijn Houdstermaatschappij*, 103 F.3d at 12 (same). As previously noted, the Arbitrator's decision to

16

apply *Artvale* was not devoid of any colorable justification. *See* Final Award ¶¶ 2.21-2.26. Moreover, while *Artvale* involved the Second Circuit's interpretation of New York law regarding litigation expenses due to a party who breaches a covenant not to sue, and New York state courts have not adopted the Second Circuit's view, New York courts have not rejected *Artvale*. *Pet. Opp.* at 5. No clear governing legal principle or well defined, explicit and clear law was ignored by the Arbitrator. As such, the Arbitrator's choice to adopt *Artvale* *sub silentio* was not manifest disregard of the law.

        Petitioners have not shown that the Award must be vacated on statutory grounds or that the Arbitrator committed manifest disregard of the law, burdens Petitioners bear. *Wallace*, 378 F.3d at 189 ("A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." (internal quotation marks and citation omitted)). CPLR § 7511(e) provides that upon a denial of a motion to vacate, a court should confirm an award. The F.A.A., 9 U.S.C. § 9 provides that upon an application for an order to confirm an arbitration award, the court must do so, unless the award is vacated, modified, or corrected under § 10 or § 11." *Yonir Tech., Inc. v. Duration Systems (1992) Ltd.*,

17

SPA18

244 F. Supp. 2d 195, 211 (S.D.N.Y. 2002).   Accordingly, the Petition must be dismissed and the Award confirmed.

**Conclusion**

Based on the reasoning set forth above, Respondents' motions to dismiss the Petition and confirm the Award are granted.   Submit judgment on notice.

It is so ordered.

New York, NY
April 15, 2014

_____
ROBERT W. SWEET
U.S.D.J.

18

SPA19

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ADVANCED AEROFOIL TECHNOLOGIES AG, a Swiss corporation, ADVANCED AEROFOIL TECHNOLOGIES, INC., a Delware corporation, and ADVANCED AEROFOIL TECHNOLOGIES GmbH, a German corporation, | Civil Action No.: 1:13-cv-07181 (RWS) |

Petitioners,

-against-

THOMAS TODARO, ADVANCED ENGINEERING
TECHNOLOGIES, ANTHONY CHALDER, MARK
TARBY, CHARLES BYRD, and DENNIS PFISTER,

Respondents.

**NOTICE OF APPEAL**

Notice is hereby given that Petitioners, Advanced Aerofoil Technologies AG, a Swiss

Corporation, Advanced Aerofoil Technologies, Inc., a Delaware Corporation, and Advanced

Aerofoil Technologies GmbH, a German Corporation, hereby appeal to the United States Court

of Appeals for the Second Circuit from the Order granting Respondents' motion to dismiss and

to confirm the arbitration award (see Docket Entry 11) entered in this action on April 16, 2014.

DATED:  New York, New York
May 16, 2014

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Petitioners

By:  _/s/__ *James T. Kim*_____
         James T. Kim
         900 Third Avenue, 16th floor
         New York, NY 10022-4728
         (212) 752-8000

41445/0032-10548953v1

SPA20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ADVANCED AEROFOIL TECHNOLOGIES, AG, a Swiss Corporation, ADVANCED AEROFOIL TECHNOLOGIES, INC., A DELAWARE CORPORATION, and ADVANCED AEROFOIL TECHNOLOGIES, GMBH, a German Corporation, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 13-cv-7181 Judge: Robert W. Sweet |
| v. | ) ) | |
| THOMAS TODARO, ADVANCED ENGINEERING TECHNOLOGIES, INC. ANTHONY CHALDER, MARK TARBY, CHARLES BYRD, and DENNIS PFISTER | ) ) ) ) ) | |
| Defendants. | ) | |

5/19/14

**JUDGMENT**

The International Centre for Dispute Resolution, having issued an Arbitration Award on July 16, 2013 in favor of the Defendants/Respondents and against the Plaintiffs/Claimants, which awarded to Defendants/Respondents:

a.  *The sum of $57,509.51 for fees and $3,517.74 for costs incurred in connection with the Illinois case filed November 1, 2011;*

b.  *The sum of $143,855.00 for fees and $9,314.71 for costs incurred in connection with the New York case filed December 23, 2011;*

c.  *The sum of $63,255.00 for fees and $24,713.59 for costs incurred in the arbitration from February 21, 2012 until September 17, 2012;*

d.  *The sum of $8,889.64 to Pfister for costs and reasonable attorney's fees incurred by him in connection with the dispositive motions identified in the Partial Fund Award; and*

— 3 —

SPA21

e.    *Interest on any amount not paid within 60 days of the issuance of this Judgment shall be 9% per annum;* and

The Plaintiffs/Petitioners having originally filed this action on September 17, 2013 in the New York Supreme Court, New York County as Index No. 653217/2013, as one to obtain vacatur of a July 16, 2013 arbitration award; and

This action having timely thereafter been removed to this Court by the Defendants/Respondents, who also moved for confirmation of the arbitration award referenced, pursuant to CPLR § 7510; and

This Court having denied the Plaintiffs/Petitioners' request for vacatur and granted the Defendants/Respondents' motion for confirmation of the arbitration award; and

The Plaintiffs/Petitioners having made no payments toward the amount of the Arbitration Award as of this date, it is now

ORDERED, ADJUDGED AND DECREED:

1.    That Defendants/Respondents shall have judgment against the Plaintiffs/Claimants, jointly and severally, in the total amount of $319,077.05 ($302,165.55 plus 9% annual interest accruing at a rate of $74.50 per day for the 227 days between September 14, 2013 and April 30, 2014) plus interest which shall continue to accrue at applicable rates from this date forward.

2.    That in addition to the above, Dennis Pfister shall also have judgment against Plaintiffs/Claimants, jointly and severally, in the total amount of $ 9,386.77 ($8,889.64 plus 9% annual interest accruing at a rate of $2.19 per day for the 227 days between

— 4 —

SPA22

September 14, 2013 and April 30, 2014) plus interest which shall continue to accrue at applicable rates from this date forward.

It is so ordered.
New York, NY
April ⁓, 2014

5 - 19 - 14

_____
Robert W. Sweet
U.S.D.J.

SPA23

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADVANCED AEROFOIL TECHNOLOGIES AG, a Swiss corporation, ADVANCED AEROFOIL TECHNOLOGIES, INC., a Delware corporation, and ADVANCED AEROFOIL TECHNOLOGIES GmbH, a German corporation, | Civil Action No.: 1:13-cv-07181 (RWS) |
| Petitioners, | |
| -against- | **AMENDED NOTICE OF APPEAL** |
| THOMAS TODARO, ADVANCED ENGINEERING TECHNOLOGIES, ANTHONY CHALDER, MARK TARBY, CHARLES BYRD, and DENNIS PFISTER, | |
| Respondents. | |

Notice is hereby given that Petitioners, Advanced Aerofoil Technologies AG, a Swiss Corporation, Advanced Aerofoil Technologies, Inc., a Delaware Corporation, and Advanced Aerofoil Technologies GmbH, a German Corporation, hereby file an amended notice of appeal, and appeal to the United States Court of Appeals for the Second Circuit from the Final Judgment entered in this action on May 19, 2014 (see Docket Entry 15).  This amended notice of appeal shall supersede that notice of appeal filed on May 16, 2014, as that document was not a final order (see Docket Entry 11).

DATED:  New York, New York
May 27, 2014

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Petitioners


By: _/s/ James T. Kim_
JAMES T. KIM
900 Third Avenue, 16th floor
New York, NY 10022-4728
(212) 752-8000

41445/0032-10635260v1

SPA24